UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
BERNADETTE M. REYES,

                    Plaintiff,              NOT FOR PUBLICATION

        -against-                           MEMORANDUM AND ORDER
                                            11-CV-2536 (KAM)(LB)

BUENAVENTURA F. REYES,

                    Defendant.
----------------------------X

**MATSUMOTO, United States District Judge**:

        On September 2, 2011, *pro se* plaintiff Bernadette M.
Reyes ("plaintiff") filed the instant Amended Complaint against
her ex-husband, Buenaventura F. Reyes ("defendant") seeking
equitable distribution of marital property and damages based on
her claims of unjust enrichment and constructive fraud.  On
September 23, 2011, defendant, also proceeding *pro se*, filed a
motion to dismiss the Amended Complaint for lack of subject
matter jurisdiction and for failure to state a cause of action.[1]
Plaintiff opposed the motion on October 11, 2011, and defendant
submitted a reply in support on October 27, 2011.  For the
following reasons, defendant's motion to dismiss the Amended
Complaint is denied in part and granted in part.

---

[1] Defendant filed the instant motion to dismiss in violation of this court's
motion practices, which require a party first to file a pre-motion conference
request and seek leave to file a motion.  Mindful of its obligation to treat
*pro se* parties' submissions with leniency, the court permitted the motion to
proceed.

## BACKGROUND

According to the Amended Complaint,[2] plaintiff was
married to defendant from February 1971 until August 1990. (ECF
No. 6, Amended Complaint, filed 9/2/2011 ("Am. Compl.") ¶¶ 1,
3.) During the course of their marriage up until their
separation, the parties lived in New York State. (*Id.* ¶ 1.)
Defendant was enlisted in the United States Coast Guard for 20
years until his retirement in March 1987, when he began
receiving military pension payments. (*Id.*) Plaintiff alleges
that "[o]n July, 1989, Defendant abandoned [the] family." (*Id.*
¶ 2.) Defendant moved to Nevada and then California, where he
established residency. (*Id.* ¶ 2.) As described below, over the
next 20 years, the parties engaged in litigation in California
and New York state courts over child support and the equitable
distribution of marital property, including defendant's military
pension payments and certain federal savings bonds. (*Id.* ¶¶ 3-
15.)

In January 1990, defendant first petitioned for
divorce in California. (*Id.* ¶ 2.) In his petition, defendant

---

[2] Attached to Amended Complaint are two Memoranda of Decision issued by the
California state court. (*See* ECF No. 6, Exs. A and B.) Because these
Decisions are appended to and incorporated by the Amended Complaint, the
court is permitted to rely on them in deciding the instant motion to dismiss.
*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Facts from those
Decisions are incorporated where necessary to provide a comprehensive
procedural background for this case, in which both parties are *pro se*. For
clarity's sake, this court will always refer to Bernadette Reyes as
"plaintiff" and Buenaventura Reyes as "defendant," regardless of the various
roles the parties have played over the years in prior litigation.

stated that there were no community or quasi-community assets known to him that were subject to disposition. (ECF No. 6, Ex. A to Am. Compl., Memorandum of Decision dated 5/23/2005 ("May 2005 Order") at 2.) In August 1990, a California state court issued a final judgment dissolving the parties' marriage and reserving jurisdiction and adjudication of the distribution of assets. (Am. Compl. ¶ 3.)

On January 11, 1991, plaintiff filed a divorce action in New York, seeking, among other things, a custody decree, child support, spousal support, and an order that "the marital property be equitably distributed." (May 2005 Order at 2.) In November 1994, the New York action proceeded to trial on the issues of "child support, spousal support, equitable distribution, and counsel fees," but due to the presiding judge's untimely death, court clerical errors, and plaintiff's change of counsel, a decision was never rendered and the case was "deemed abandoned." (*Id*. at 2-3; *see also* Am Compl. ¶ 4.) In 2000, plaintiff attempted to restore the New York case over defendant's argument that laches applied to her claims. (Am. Compl. ¶ 5; *see also* May 2005 Order at 3.) The court's ruling is somewhat unclear, but the court appears to have given plaintiff permission to proceed with a partition claim. (*Id*.) According to the Amended Complaint, plaintiff subsequently sought partition of the parties' real property in New York, and

"[d]efendant physically appeared in [the] New York court to claim his equitable share."  (Am. Compl. ¶ 6.)

On May 8, 2002, plaintiff commenced an action in California Superior Court under California Family Code § 2556, which grants the court continuing jurisdiction over undivided assets in a divorce proceeding, seeking equitable distribution of the military pension funds and federal savings bonds.  (*Id.* ¶ 7; May 2005 Order at 3.)  Defendant again raised the defense of laches, arguing that plaintiff had unreasonably delayed in pursuing her claim to these assets since the New York court's decision in 1996.  (May 2005 Order at 4.)  Defendant also argued that the passage of time had prejudiced him insofar as he had already utilized some of the pension funds and savings bonds, that plaintiff's remedy lay "in the state of New York," and that the New York court's "order" was *res judicata*.  (*Id.*)  In response to defendant's challenge to California's jurisdiction over the pension funds and savings bonds, plaintiff noted that defendant had started the divorce action in California, California courts had reserved jurisdiction on all other issues after issuing the status judgment in 1990, defendant was domiciled in California, and the pension fund and savings bonds were in the possession or control of defendant since he began residing in California.  (*Id.* at 5.)

4

On May 23, 2005, the Los Angeles Superior Court
granted plaintiff's request for equitable distribution, finding,
in pertinent part, that: (i) there had been no prior decision
regarding distribution of the military pension funds and savings
bonds by either the California or New York courts; (ii) laches
did not bar plaintiff from obtaining a share of the pension
funds and savings bonds because she was "diligent" in her
efforts to divide the property over the years; and (iii)
defendant would not be unduly prejudiced by dividing the
pensions and bonds in a manner that would require him to repay
some portion to plaintiff because, in essence, he knew these
assets had not been adjudicated over the fifteen years the
parties had been litigating but had still used them for his own
personal benefit.  (May 2005 Order at 6-8.)  The Superior Court,
however, refrained from actually distributing or dividing the
assets, and "reserve[ed] jurisdiction on the division of those
assets pending further hearing on the disposition and/or
division of all the community property assets alluded to" by the
parties.  (*Id*. at 8; *see also* Am. Compl ¶¶ 8-9.)  The issues
left open by the Superior Court's May 2005 Order were continued
several times until September 25, 2008, when the Superior Court
held oral argument on the unresolved topics.  (ECF No. 6, Ex. B
to Am. Compl., Memorandum of Decision dated 12/22/2008
("December 2008 Order") at 1.)

On December 22, 2008, the Superior Court reversed its earlier decision that California had jurisdiction over any of the marital property, including the military pension and savings bonds. (December 2008 Order at 4.) Specifically, because "the domicile of the marriage was New York, [defendant] alone moved to California and instituted the dissolution proceedings, and [plaintiff] continued to reside in the state of New York," the Superior Court found that it had no jurisdiction over any of the marital property, pursuant to *In re the Marriage of Roesch*, 83 Cal. App. 3d 96 (Cal. 1978). (December 2008 Order at 3-4.) The California Court of Appeals affirmed the Superior Court's decision in May 2010, and the Supreme Court of California denied further review in June 2010. (Am. Compl. ¶¶ 13-15.)

On September 2, 2011, plaintiff filed the instant Amended Complaint with the court. (*See generally* Am. Cmpl.) In this action, plaintiff invokes the diversity jurisdiction of this court pursuant to 28 U.S.C. § 1332, because she resides in New York and defendant resides in California. (*Id*. ¶¶ 16-21.) Plaintiff alleges that the amount in controversy exceeds the statutory minimum of $75,000, based on the sum of the value of the military pension, the federal savings bonds, and the "general damages" she seeks. (*Id*. ¶ 26.) She does not seek a specified damages amount. According to the Los Angeles Superior

Court, the value of the outstanding savings bonds[3] is approximately $8,962.50. (December 2008 Order at 2, 8-9.)

Plaintiff asks the court to equitably distribute the defendant's military pension, federal savings bonds during the marriage, and to award her "[g]eneral damages resulting from Defendant's conduct," as well as any other relief the court deems proper. (*Id*. ¶¶ 27-31.) Plaintiff also requests that the court find constructive fraud and unjust enrichment related to defendant's use of the military pension and federal savings bonds and impose a constructive trust on any portion of the assets used by defendant that should have been paid to plaintiff. (*See id*. ¶¶ 22-24.)

On September 23, 2011, defendant moved to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and for failure to state a cause of action pursuant to Rule 12(b)(6). (ECF No. 7, Defendant's Motion to Dismiss ("Mot.").) On October 11, 2011, plaintiff submitted a response. (ECF No. 9, Plaintiff's Response in Opposition ("Resp.").) Defendant submitted a reply in support

---

[3] As explained by the Superior Court, defendant began purchasing savings bonds prior to the parties' marriage at a rate of $25 per pay period and he continued that practice throughout the marriage until he retired in 1987. (December 2008 Order at 8.) Defendant estimates that he purchased about 25% of the total bonds prior to their marriage. (*Id*.) According to plaintiff, the original savings bonds totaled $11,950 at the time of the 1989 separation. (*Id*.) Thus, the Superior Court noted that plaintiff could be entitled to equitable distribution of 75%, or $8962.50, of the total outstanding savings bonds. (*Id*. at 8-9.)

of his Motion on October 27, 2011. (ECF No. 10, Defendant's
Reply in Support of Motion to Dismiss ("Reply").)

**DISCUSSION**

## I. Legal Standards

### A. *Pro Se* Submissions

The court is mindful that "[a] document filed *pro se*
is 'to be liberally construed,' and . . . must be held to less
stringent standards than formal pleadings drafted by lawyers.'"
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v.
Gamble*, 429 U.S. 97, 106 (1976)). Furthermore, pleadings and
briefs submitted by *pro se* litigants must be read liberally and
interpreted "to raise the strongest arguments they suggest."
*Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)
(internal quotation marks omitted). Because both parties in
this case are *pro se*, the court will construe their submissions
liberally. *Bertin*, 478 F.3d at 491.

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1),
a court may dismiss a complaint when it lacks subject matter
jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1); *see
Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A
case is properly dismissed for lack of subject matter
jurisdiction under Rule 12(b)(1) when the district court lacks
the statutory or constitutional power to adjudicate it."). In

reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *Makarova*, 201 F.3d at 113.  In deciding a Rule 12(b)(1) motion to dismiss, the court may refer to and rely on evidence outside the pleadings.  *J.S.*, 386 F.3d at 110.

### C.  Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint when a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Thus, in order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing plausibility on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *id*. at 1950, and afford the plaintiff every reasonable inference, *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.

2009).  However, the allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1949-50 (internal quotation marks and citations omitted).

The facial plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  This does not require a showing of a "probability" of misconduct, but it does demand more than "a sheer possibility that a defendant has acted unlawfully."  *See id*.  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate.  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950); *see also Twombly*, 550 U.S. at 570 (noting that where "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").  Indeed, "however true," if the allegations in a complaint "could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558 (internal quotation marks and citations omitted).

Although, in the Rule 12(b)(6) context, the court is "normally required to look only to the allegations on the face of the complaint," it may also "consider documents ... that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). "And whatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" *Id*. at 510 (quoting *Twombly*, 550 U.S. at 563).

For the reasons that follow, defendant's motion to dismiss the Amended Complaint is denied in part and granted in part.

## I. Federal Diversity Jurisdiction and Venue are Proper in the Eastern District of New York

The court first determines that that both jurisdiction and venue are proper in this case.[4] Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp*., 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583 (1999)). Under the relevant statutory provisions, federal jurisdiction is available only when a "federal question" is

---

[4] Notably, plaintiff's original Complaint (ECF No. 1) was dismissed with leave to amend due to jurisdictional pleading defects. (*See generally* ECF No. 4, Memorandum and Order dated 8/16/2011.)

presented under 28 U.S.C. § 1331 or the parties are of diverse

citizenship and the amount in controversy exceeds $75,000

pursuant to 28 U.S.C. § 1332.

A federal court may only exercise diversity

jurisdiction pursuant to § 1332 where there is "complete

diversity," and "diversity is not complete if any plaintiff is a

citizen of the same state as any defendant." *Cresswell v.

Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). The party

invoking federal diversity jurisdiction bears the "burden of

proving that it appears to a 'reasonable probability' that the

claim is in excess of the statutory jurisdictional amount."

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784

(2d Cir. 1994) (citation omitted). The court treats the face of

a complaint as a "good faith representation of the actual amount

in controversy," establishing a rebuttable presumption that the

amount alleged is the actual amount in controversy. *Sarfraz v.

Vohra Health Services, PA*, 663 F. Supp. 2d 147, 149 (E.D.N.Y.

2009) (quoting *Scherer v. Equitable Life Assurance Society of

U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)). To overcome this

presumption, the party opposing jurisdiction must show "to a

legal certainty" that the amount recoverable does not meet the

jurisdictional threshold. *Wolde-Meskel v. Vocational

Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir.

1999) (internal quotation marks omitted). The Second Circuit

12

has set a high bar for overcoming this presumption. *Scherer*, 347 F.3d at 397. "'[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *Id.* (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070-71 (2d Cir. 1996)). Thus, "[w]here the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Tongook*, 14 F.3d at 785 (citation omitted). In fact, "'even where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.'" *Scherer*, 347 F.3d at 397 (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)).

In the instant dispute, plaintiff alleges that she is a resident of New York, and that defendant is a resident of California. (Am. Compl. ¶¶ 16.) The Amended Complaint thus sets forth complete diversity in citizenship. Plaintiff also alleges that the amount in controversy exceeds $75,000 based on the combined value of the military pension, the federal savings bonds, and "general damages" sought by plaintiff. (Am. Compl. ¶ 26.) As the California state court observed, the value of the savings bonds at issue is approximately $8,962.50. (December 2008 Order at 2, 8-9.) Although plaintiff has not alleged the specific value of the military pension, her allegations provide

13

the court with a "reasonable probability" that the amount in controversy fulfills the statutory requirements for diversity jurisdiction because plaintiff alleges that amount in controversy, including the value of defendant's military pension for twenty years of service, exceeds $75,000. (Am. Compl. ¶¶ II, 26.) *See*, *e.g., Sarfraz*, 663 F. Supp. 2d at 150-51 (amount-in-controversy requirement established even where claims for declaratory judgment were unvalued by complainant); *Kaminski v. Polish & Slavic Fed. Credit Union*, No. 06 CV 688, 2007 WL 2343673, at *5 (E.D.N.Y. Aug. 13, 2007) (amount-in-controversy requirement was satisfied where plaintiff sought punitive damages in unspecified sum). Plaintiff has, therefore, properly alleged a basis for this court's exercise of diversity jurisdiction over the complaint.[5]

Additionally, when federal jurisdiction is predicated on diversity, as with the case *sub judice*, venue is determined pursuant to 28 U.S.C. § 1391, which provides, in pertinent part, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, *or a substantial part of property that is the subject of the action is situated*." 28 U.S.C. § 1391(a)

---

[5] Should it become apparent later in the case that the pension is valued under $75,000, dismissal may very well be appropriate. *See Tongkook*, 14 F.3d at 786.

(emphasis added).[6]  Because venue is appropriate in each district

where a substantial part of the events or omissions occurred,

"venue maybe appropriate in a given district even if a greater

portion of events occurred elsewhere." *Cont'l Ins. Co. v.*

*Securi Enters., Inc.,* CV 09-3731, 2010 WL 3702559, at *2

(E.D.N.Y. Aug. 16, 2010), *adopted by* 2010 WL 3619704 (E.D.N.Y.

Sept. 9, 2010).  Thus, when determining venue in diversity

action "courts are not, in general, required to determine the

'best venue,' but merely a logical one with a substantial

connection to the litigation." *Reliance Ins. Co. v. Polyvision*

*Corp.*, 474 F.3d 54, 59 (2d Cir. 2007) (citing *Bates v. C & S*

*Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (noting that

the venue statute does not require the district court to

determine the best venue, only a suitable one)).

Here, when construing all inferences in favor of the

*pro se* plaintiff, she has alleged facts sufficient to provide a

basis for bringing her complaint in this venue.  The parties

resided in New York throughout their marriage, during which time

defendant purchased approximately 75% of the federal savings

bonds and earned almost all of his military pension.  (Am.

Compl. ¶ 1; December 2008 Order at 8-9.)  Additionally,

plaintiff represented on the civil cover sheet attached to her

---

[6] Because the Amended Complaint was filed on September 2, 2011 (*see* ECF No.
6), the court will apply the version of 28 U.S.C. § 1391 in effect at that
time.

original complaint that a substantial part of the events giving rise to her claims occurred in the Eastern District. (*See* ECF No. 1, Ex. 1, Civil Cover Sheet at 2.) Plaintiff also currently lives in this district and possesses of all of the original savings bonds purchased by defendant during their marriage. (Am. Compl ¶ I; December 2008 Order at 8-9.) Thus, venue is proper because this district bears a "substantial connection" to this litigation, given that one of the only two marital assets of which plaintiff seeks distribution is located here and because a substantial part of the events giving rise to the claim occurred in this district.

## II. The *Rooker Feldman* Doctrine Does Not Apply

With respect to defendant's arguments in support of his motion to dismiss, he first contends that this court lacks subject matter jurisdiction to divide defendant's military pension and federal savings bonds because the issue has already been litigated and decided by both the California and New York State courts and, therefore, the *Rooker-Feldman* doctrine bars this court from reviewing the state court's decision. (Mot. ¶¶ 7-10.) Plaintiff responds that neither the California or New York state courts decided the merits of her claim to the military pension and federal savings bonds and, thus, *Rooker-Feldman* does not apply. (Resp. ¶¶ 11-12.)

The *Rooker-Feldman* doctrine precludes a federal district court from reviewing an issue that has already been litigated and decided by a state court. *See, e.g., Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). The Supreme Court has held that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005).

It is settled in the Second Circuit that the four factors required to justify application of the *Rooker-Feldman* doctrine are: (1) plaintiff lost in state court; (2) plaintiff complains of injuries caused by state court judgments; (3) plaintiff asks this court to review and reject the state court's judgments; and (4) the state court judgments in question were rendered before the present action was commenced. *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009)(citing *Hoblock*, 422 F.3d at 85).

Here, defendant's argument fails on the first factor because the Amended Complaint's allegations and appended exhibits demonstrate that no court has previously adjudicated the status of the marital property that plaintiff seeks to

divide in this action.  The first time the California State
court addressed the question, it found that it had jurisdiction
but did *not* actually adjudicate anything with respect to the
distribution of the subject marital property.  (May 2005 Order
at 8 (finding that "the court reserves jurisdiction on the
division of [the subject] assets pending further hearing on the
disposition and/or division of all the community property
assets").)  Further, in later reversing its decision that
jurisdiction existed over the subject marital assets because the
marriage was domiciled in New York and plaintiff had resided in
New York since the parties' separation, the California State
court continued to treat these assets as "unadjudicated."
(December 2008 Order at 1-2, 4.)

        Similarly, the New York state courts did not decide
the merits of plaintiff's claim to the military pension and
federal savings bonds.  As explained by the California state
court and the plaintiff in her submissions, the New York divorce
action never resulted in a decision on these assets due to the
sudden incapacity of the trial judge.  (May 2005 Order at 6; *see
also* Am. Compl. ¶¶ 4-5; Resp. ¶¶ 5-7.)

        There is, thus, no "state court" decision from
California or New York regarding the disposition of these assets
that might trigger the application of the *Rooker-Feldman*
doctrine to the instant dispute.  Accordingly, defendant's

motion to dismiss based on the *Rooker-Feldman* doctrine is denied.

## III. The Domestic Relations Exception Does Not Apply

Defendant next argues that the case falls within the domestic relations exception to diversity jurisdiction and, therefore, this court lacks subject matter jurisdiction to decide the case. (Mot. ¶ 11.) Plaintiff responds that her Amended Complaint for division of marital property does not implicate the "core" domestic relations issues that are usually the subject of the domestic relations exception to diversity jurisdiction. (Resp. ¶¶ 13-14.)

The domestic relations exception to diversity jurisdiction applies where the dispute concerns one of the "core" domestic relations issues such as divorce or custody. *See, e.g., United States v. Nichols*, 928 F. Supp. 302, 317 (S.D.N.Y. 1996) (noting that enforcement of child support decrees and tort claims by children against a parent were not "core" domestic relations issues precluded by exception), *aff'd*, 113 F.3d 1230 (2d. Cir. 1997). The Second Circuit has stated that the scope of this exception is very narrow and only applies where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child. *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *see*

*also King v. Commn'r & New York City Police Dep't*, 60 F. App'x 873, 875 (2d Cir. 2003) ("[E]ven under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees.").

Here, plaintiff's complaint is not based on the so-called "core" domestic relations issues, such as the status of the parties' divorce, alimony, or child support decree. (*See generally* Am. Compl.) Instead, plaintiff seeks division and distribution of certain federal savings bonds and military pension payments, the rights to which were acquired (for the most part) during the courts of the parties' marriage, but the benefits of which were received and/or retained exclusively by defendant. (Am. Compl. ¶¶ 27-31.) The Amended Complaint, therefore, is not barred by the domestic relations exception to diversity jurisdiction. *See Kirby v. Mellenger*, 830 F.2d 176, 178 (11th Cir. 1987) (finding that domestic relations exception did not apply to dispute regarding military retirement benefits because parties were long-divorced, child custody and support were not at issue, there was no pending state court action, and there was little likelihood of "the kind of bitter domestic dispute with which the federal courts are unfamiliar"). Defendant's motion to dismiss based on the domestic relations exception must be denied as well.

**IV. Motion to dismiss for failure to state a claim**

Defendant also moves under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim for constructive trust, constructive fraud, or unjust enrichment. Defendant generally argues that the plaintiff has failed to set forth "any elements" of any of the causes of action she alleged, and "even if plaintiff proves the facts alleged in the complaint, she cannot prove the elements necessary to state any causes of action." (Mot. ¶¶ 12-15.) Plaintiff responds that defendant's wrongful retention of the pension funds after the 1990 divorce decree justifies her pursuit of remedies for a constructive trust and unjust enrichment. (Resp. ¶¶ 15-17; Am. Compl. ¶¶ 22, 24.) According to plaintiff, defendant's various "devious" actions, specifically his reporting of the savings bonds as lost and retaining the replacement bonds for his exclusive use, support plaintiff's claim for constructive fraud. (Resp. ¶¶ 15-17; Am. Compl. ¶ 23.)

**A. Unjust Enrichment and Constructive Trust Claims**

Plaintiff alleges "constructive" trust as a cause of action in the Amended Complaint, stating that such a trust should be "imposed with respect to the military pension payments received and retained by [defendant] since the dissolution of the [parties'] marital [relationship]." (Am. Compl. ¶ 22.) Constructive trust, however, is not a cause of action; it is "a

21

remedy to rectify fraud and prevent unjust enrichment." *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 395 (S.D.N.Y. 1993) (citing *Bankers Sec. Life Ins. Soc. V. Shakerdge*, 49 N.Y.S.2d. 939, 940 (N.Y. 1980)).  Plaintiff also alleges unjust enrichment as a cause of action, stating that "[d]efendant's exclusive use and benefit of the military pension and the federal savings bonds" unjustly enriched defendant following the parties' divorce.  (Am. Compl. ¶ 24.)  As a result of defendant's conduct, plaintiff alleges that she "was deprived of her legal entitlement to substantial marital properties suffering financial loss and economic damages for over twenty years."  (*Id.*)  The court will thus address these purportedly separate "causes of action" together.  For the reasons explained below, the Amended Complaint states a claim for unjust enrichment and also alleges the necessary circumstances for plaintiff's constructive trust remedy to defeat defendant's motion to dismiss.

Generally, "[u]njust enrichment is premised on the notion that where principles of contract law are inadequate to compensate an unjustly deprived party, a court should resort to principles of equity."  *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770, 2003 WL 1858153, at *6 (S.D.N.Y. Apr. 10, 2003) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  To succeed in recovering for unjust enrichment in New

York, a plaintiff must establish: "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001) (citing *State v. Barclays Bank*, 76 N.Y.2d 533, 561 (N.Y. 1990)).

The Amended Complaint sets forth facts to support a claim for unjust enrichment. Plaintiff has alleged that defendant's "exclusive use and benefit" of the military pension fund and savings bonds unjustly enriched him at plaintiff's expense. (Am. Compl. ¶ 24.) Her allegations also establish that this dispute presents circumstances "such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac.*, 273 F.3d at 519. As the California state court noted, defendant initially reported in his 1990 petition for divorce that there were "no community or quasi-community assets or obligations" known to him subject to disposition in the divorce action. (May 2005 Decision at 2.) Yet, at some point thereafter, he (1) reported the savings bonds "lost" to the military and received full replacement bonds; and (2) continued to exclusively receive pension payments. (December 2008 Order at 8-9.) He has had "total control and utilization" of these assets since the parties' divorce (May

23

2005 Decision at 4), and used $4,000 of the replacement bonds to pay for his attorneys' fees in the New York state litigation (December 2008 Decision at 8). According to the California state court, which had the benefit of a more developed record, defendant knew when he accepted payment on the bonds and pension that the rights to these assets were unadjudicated and that plaintiff had not agreed to his exclusive use of marital property. (May 2005 Decision at 7-8.) The California court thus stated, "to the degree [defendant] chose to use the pension funds and the bonds such that any possible community portion has already been spent by him . . . [defendant] contributed, in part, to any prejudice he may now suffer [should he be required to reimburse plaintiff]." (*Id*. at 8.) In the meantime, plaintiff alleges, she has not been able to access these assets throughout her extremely protracted efforts in this litigation. (Am. Compl. ¶¶ 18-25; December 2008 Decision at 2-8.) Under these circumstances, the court finds these allegations adequate to present a claim for unjust enrichment with respect to the portion of marital assets defendant has already spent that should rightfully be distributed to plaintiff.

Because plaintiff has adequately alleged her claim for unjust enrichment, the court now turns to whether she has set

forth sufficient facts to sustain her action for the imposition of a constructive trust.[7]

A constructive trust is an equitable remedy and "courts do not rigidly apply the elements but use them as flexible guidelines." *Moak v. Raynor*, 814 N.Y.S.2d 289, 291 (App. Div. 3rd Dep't 2006). Under New York law, a party claiming entitlement to a constructive trust must ordinarily establish four elements: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992). While these four elements constitute "important guideposts," New York courts have imposed constructive trusts even when one or more of the elements have not been met, as long as there is "a showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361-62 (2d Cir. 1999) (applying New York law); *see also In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (emphasizing that "[t]he fourth element is the most important

---

[7] The court notes that plaintiff alleged only the pension funds as the basis for her requested constructive trust. (Am. Compl. ¶ 22.) Yet, because "constructive trust" is really a remedy for unjust enrichment, which plaintiff did allege in connection with both the pension funds and savings bonds, the court will presume that the *pro se* plaintiff intends to seek a constructive trust over both the pension funds and savings bonds.

since 'the purpose of the constructive trust is prevention of unjust enrichment,'" and finding constructive trust unwarranted where circumstances did not indicate fraud or wrongful conduct).

Regarding the first element, as previously noted, plaintiff alleged that she and defendant were married. (Am. Compl. ¶ 1.) In New York, a confidential relationship is established by the fact of a marriage. *See, e.g., In re Fill*, 82 B.R. 200, 224 (S.D.N.Y. 1987) (applying New York law and noting that "marital relationship has been held sufficient to satisfy the confidential relationship factor of a constructive trust"); *Janke v. Janke*, 366 N.Y.S.2d 910, 914 (App. Div. 1975) (same), *aff'd*, 39 NY.2d 786 (1976). Plaintiff has thus alleged facts to satisfy the first element.

As to the second element, the presence of an express or implied promise, New York courts have held that "the promise need not be express, but may be implied based on the circumstances of the relationship," such as a marriage or co-habitant relationship, "and the nature of the transaction." *Moak*, 814 N.Y.S.2d at 291 (reversing dismissal of complaint and grant of summary judgment where it was plausible to infer that transfer and promise element existed in confidential co-habitant relationship); *see also Sharp v. Kosmalski*, 40 N.Y.2d 119, 122-23 (N.Y. 1976) (reversing trial court's dismissal of complaint where promise element could be implied by the court in the

presence of confidential romantic relationship); *Tordai v.*
*Tordai*, 486 N.Y.S.2d 802, 803 (App. Div. 1985) (promise element
implied by court due to parties' marriage relationship).  Here,
although plaintiff did not allege an explicit promise by
defendant to her that she would share in the marital assets,
such as the pension funds and savings bonds, she alleged that
she was married to defendant for eighteen years, during which
time he earned almost all of his entitlement to the military
pension and purchased the majority of the bonds.  (*See* Am.
Compl. ¶¶ 1-2; December 2008 Order at 8-9.)  At this stage of
the case, it is reasonable to infer that plaintiff contributed
her efforts to the parties' eighteen-year marriage in reliance
on the implied promise that, by virtue of her status as
defendant's wife, she would share in his military pension and
savings bonds when they were paid out.  Plaintiff's allegations,
therefore, sufficiently set forth a basis from which to infer an
implied promise to continue to share in the pension funds and
the savings bonds.

Plaintiff has also alleged facts to satisfy the third
element, whether a transfer in reliance on a promise occurred.
New York courts have deemed the transfer element satisfied where
"funds, time and effort were contributed to in reliance on a
promise to share in some interest in property, even though no
transfer actually occurred."  *Moak*, 814 N.Y.S.2d at 291-93

27

(citing cases).  Plaintiff has alleged that defendant earned his military pension during their marriage and has also alleged facts giving rise to the inference that she was impliedly promised a share in the military pension as a result of the parties' eighteen-year marriage relationship.  (*See* Am. Compl. ¶¶ 1-2.)  Therefore, because the transfer element may be satisfied where "funds, time and effort were contributed to in reliance on a promise to share in some interest in property, even though no transfer actually occurred," it is reasonable to infer at this stage that plaintiff contributed her "time and effort" to the parties' eighteen-year marriage relationship in reliance[8] on the implied promise that, as defendant's wife, she would share in his military pension and savings bonds when they were paid out.  Plaintiff's allegations, therefore, fulfill the third element as well.  *See also Counihan,* 194 F.3d at 361-62 (imposing constructive trust even though transfer element was not firmly established because unjust enrichment would result in absence of trust).

Finally, as noted above, with respect to the fourth and most important element, plaintiff has alleged facts to establish unjust enrichment.  Accordingly, based on the

---

[8] Evidence of her reliance may also be construed from the fact that plaintiff was still married to defendant during the first two years he received the pension funds, likely sharing in them, and continued to contribute her time and effort to the marriage in reliance on the promise of continued sharing in the future. (*See* Am. Compl. ¶¶ 1-2.)

foregoing and after drawing all reasonable inferences in favor
of plaintiff, the court denies defendant's motion to dismiss for
failure to state a claim for unjust enrichment and a
constructive trust.

### B. Constructive Fraud Claim

Plaintiff seeks also damages based on constructive
fraud, alleging that defendant "reported the undivided federal
savings bonds lost and [had them] replaced . . . to gain
physical possession of the bonds for his exclusive use and
benefit in California" without "notifying plaintiff." (Am.
Compl. ¶ 23.)

To state a cause of action for constructive fraud in
New York, plaintiff must show that: (1) defendant made a
representation; (2) the representation concerned a material
fact; (3) the representation was false; (4) defendant made the
representation with the intent to cause plaintiff to rely on it;
(5) plaintiff reasonably relied on the representation; (6)
injury resulted; and (7) plaintiff and defendant are in a
fiduciary or confidential relationship. *Zackiva Commc'ns Corp.
v. Horowitz*, 826 F. Supp. 86, 89 (S.D.N.Y. 1993) (citing *Del
Vecchio v. Nassau Cnty.*, 499 N.Y.S.2d 765, 768 (App. Div.
1986)). Unlike with a traditional positive (or "actual") fraud,
however, the plaintiff need not prove that the defendant
actually knew that his representations were false in order to

29

recover damages for constructive fraud.  *Levin v. Kitsis*, 920

N.Y.S.2d 131, 135 (App. Div. 2011); *accord Del Vecchio*, 499

N.Y.S.2d at 768.  Additionally, under New York law, "if there is

some fiduciary or confidential relationship between the parties

. . . . nondisclosure is deemed tantamount to an affirmative

misrepresentation."  *Estate of Ginor v. Landsberg*, 960 F. Supp.

661, 666 (S.D.N.Y. 1996), *aff'd sub nom. Ginor v. Landsberg*, 159

F.3d 1346 (2d Cir. 1998).

        Applying the above principles in light of the court's

obligation to construe both *pro se* parties' pleadings to raise

the strongest arguments they suggest, the court finds that

plaintiff's Amended Complaint fails to state a claim for

constructive fraud.  Although the parties' marriage establishes

that a "fiduciary or confidential" relationship existed between

them, *see, e.g., In re Fill*, 82 B.R. at 224, and, thus,

defendant's failure to disclose to plaintiff his receipt and use

of the replacement savings bonds is "deemed tantamount to an

affirmative misrepresentation," *Estate of Ginor*, 960 F. Supp. at

666, plaintiff has not alleged that she actually relied on this

failure to disclose to her detriment.  Nor are there facts

alleged to provide a basis from which to infer reliance – for

example, even if defendant had *not* reported the original savings

bonds as lost and cashed in some of the replacement bonds,

plaintiff would still be in the same position she is in today:

one of two holders of equitable title to a portion of the bonds,
which cannot be lawfully distributed to either holder until the
court issues an order dividing the assets.[9]  There is thus no
basis to find that plaintiff actually relied on defendant's
failure to disclose that the bonds were no longer intact.
Therefore, because actual (and reasonable) reliance is a
necessary element of all the species of fraud claims plaintiff
might bring,[10] the Amended Complaint fails to state a claim for
constructive fraud.  Defendant's motion to dismiss the
constructive fraud claim in the Amended Complaint is granted.

### C.    Claim for "General Damages"

Plaintiff also seeks "general damages" in the Amended
Complaint, based on defendant's "conduct undermining his legal
obligations to the parties' marriage and his devious
circumvention of the divorce process," which caused plaintiff to
sustain "further physical, mental and emotional suffering[]in
pursuing the final resolution of the marriage."  (Am. Compl. ¶
25.)  Plaintiff further alleges that, "[b]y hindering and
protracting the dissolution process for more than twenty years

---

[9] Because the court has not dismissed plaintiff's claim of unjust enrichment
for the portions of the bonds and pension funds improperly spent by
defendant, plaintiff will be able to pursue her lawful share of the bonds and
pension funds.
[10] To the extent plaintiff's claim could be cast as one for fraudulent
concealment based on an omission or failure to disclose as opposed to
positive fraud (hinging on a misrepresentation), it would still fail for lack
of reasonable reliance.  *See, e.g., Mandarin Trading Ltd. v. Wildenstein*, 884
N.Y.S.2d 47, 50 (App. Div. 2009) (noting that reasonable reliance is a
necessary element of both fraudulent concealment and fraudulent
misrepresentation claims), *aff'd*, 16 N.Y.3d 173 (N.Y. 2011).

in New York and California for economic gain, Defendant caused
Plaintiff [to incur] undue legal cost and expenses, prejudice
and court sanctions in pursuing her rights."  (Am. Compl. ¶ 25
(citation omitted).)

The court liberally construes plaintiff's request for
"general damages" as a combined request for compensatory damages
and punitive damages.  An award of compensatory damages is meant
"to place the wronged victim in the same position as it was
prior to the wrongdoing, without providing the recovery of any
windfall." *Syncora Guar. Inc. v. Countrywide Home Loans, Inc.*,
935 N.Y.S.2d 858, 869 (N.Y. Sup. Ct. 2012); *see also* 4 N.Y.
PRAC., COM. LITIG. IN N.Y. STATE COURTS § 46:2 (3d ed. 2012)
("Whether arising from a breach of contract or a tort,
compensatory damages are intended to compensate the injured
party for its losses caused by the breach or tortious conduct.
Compensatory damages 'proceed from a sense of natural justice'
to repair the losses caused to one by the wrong of another.").
As discussed above, plaintiff's allegations of unjust enrichment
are adequate to survive the instant motion to dismiss, and thus
she may be able to prove her entitlement to compensatory damages
in addition to any equitable remedies (in the form of
constructive trust or otherwise).  The court, therefore, denies
defendant's motion to dismiss plaintiff's claim for "general
damages" as it relates to compensatory damages.

By contrast, "[p]unitive damages are not to compensate the injured party but rather to punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (N.Y. 2007). Punitive damages are not, however, awarded in the absence of "conduct evinc[ing] a high degree of moral turpitude and demonstrat[ing] such wanton dishonesty as to imply a criminal indifference to civil obligations." *Howard S. v. Lillian S.*, 876 N.Y.S.2d 351, 355 (App. Div. 2009) (citing *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (N.Y. 1961)), *aff'd*, 14 N.Y.3d 431 (N.Y. 2010). Here, even when fully crediting plaintiff's allegations of deceit regarding defendant's actions with respect to the pension funds and savings bonds, the allegations do not rise to the level of "conduct evinc[ing] a high degree of moral turpitude and demonstrat[ing] such wanton dishonesty as to imply a criminal indifference to civil obligations." *See Howard S.,* 876 N.Y.S.2d at 355. The court will thus dismiss plaintiff's claim for "general damages" to the extent it requests punitive damages.

## CONCLUSION

For the reasons stated, defendant's motion to dismiss the Amended Complaint is denied in part and granted in part as follows. Defendant's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction is denied. Defendant's

motion to dismiss plaintiff's claim for unjust enrichment and constructive trust is denied, but is granted with respect to the claim for constructive fraud.  Plaintiff's claim for punitive damages is also dismissed, but she may proceed with her claims for compensatory damages and equitable relief.  The Clerk of the Court is respectfully requested to serve both *pro se* parties with a copy of this Memorandum and Order and note service of the same on the docket.  The parties are directed to contact Magistrate Judge Bloom to schedule a conference to discuss discovery and settlement.

**SO ORDERED.**

Dated: September 14, 2012
Brooklyn, New York

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York